UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Lourdes S. Conde

    v.                                 Civil No. 15-cv-246-JD
                                           Opinion NO. 2016 DNH 018
Carolyn W. Colvin,
Acting Commissioner,
Social Security Administration


O R D E R


Lourdes S. Conde seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of the Social Security Administration, denying her application for disability benefits and supplemental security income.  In support, Conde argues that the Administrative Law Judge ("ALJ") made factual and legal errors in finding that she was not disabled.  The Acting Commissioner moves to affirm the decision.


Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  The court defers to the ALJ's

factual findings as long as they are supported by substantial evidence.  § 405(g).  "Substantial evidence is more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Astralis Condo. Ass'n v. Sec'y Dep't of Housing & Urban Dev., 620 F.3d 62, 66 (1st Cir. 2010).

## Background

Conde was forty-three years old in August of 2010 when she alleges her disability began.  She completed the seventh grade in school.  She previously worked as an assembler in an industrial laundry company.

The medical records summarized in the parties' factual statement begin in July of 2011 when Conde discussed her newly diagnosed diabetes with her treating physician, Dr. Karen Shannon.  Thereafter, she had two visits to emergency rooms, in December of 2011 and May of 2012 for cardiology related symptoms.  She also continued treatment for diabetes.

At the end of April of 2012, Conde went to Elliott Hospital because she had taken ten tablets of sleeping medication.  She said she was thinking of suicide.  She was discharged three days later with a Global Assessment of Functioning Score of 50.  She then received mental health treatment at The Mental Health Center of Greater Manchester.  In June she started a new

medication but did not have any improvement in her anxiety or poor sleep.  By the end of June, she was functioning well.

Conde was assessed at The Mental Health Center on July 16, 2012.  She reported agitation, angry outbursts, anxiety, poor concentration, depressed mood, low energy, poor appetite, and suicidal ideation and behavior.  The assessment found, however, that her general appearance, interview behavior, thought, motor activity, speech, mood, affect, and intellect were all normal. At subsequent treatment sessions, Lourdes continued to report agitation, angry outbursts, depressed mood, decreased appetite, poor concentration, insomnia, financial stress, and high stress with her son.

Dr. E. Hurst completed a form for the New Hampshire Department of Health and Human Services in July of 2012.[1]  Dr. Hurst recounted Conde's report of diabetes, depression, angry outbursts, and an inability to deal with stress.  During the interview, Dr. Hurst found that Conde was cooperative and pleasant, was not in acute distress, and had non-pressured speech but appeared to be somewhat depressed with a blunt and congruent affect.  Conde was alert, oriented, and attentive. Dr. Hurst concluded that Conde had a moderate degree of functional loss in daily activities and social function,

--------

[1] The joint factual statement erroneously dates the form as having been completed in July of 2010.

3

frequent functional loss in task performance, and repeated
functional loss in stress reaction.  With treatment, Dr. Hurst
thought, Conde would be moderately limited and would not be able
to work for four years.

Psychologist Jessica Stern conducted a mental health
evaluation of Conde in September of 2012.  Conde reported many
problems with her son and symptoms that included constant
crying, anxiety, insomnia, poor appetite, fatigue, and panic
attack feelings.  Conde also reported that she had vertigo.

During the interview, Conde was polite and cooperative but
cried throughout.  Dr. Stern found that Conde had some
difficulty remembering verbal instructions but no difficulty
following written instructions and that Conde would not have
trouble with attendance or getting along with others in a work
environment.  Dr. Stern also concluded that if Conde could set
boundaries for her son, she would do better emotionally.  Based
on a review of the record, Dr. Laura Landerman, a psychologist,
found in September of 2012 that Conde was able to understand,
recall, and carry out short and simple instructions and could
sustain concentration and attention for two hours on routine
tasks at an acceptable pace in a work day.

In October of 2012, Lourdes was treated at Dartmouth-
Hitchcock Hospital for acute nausea and vomiting.  A CT scan of
her head showed evidence of a past infract, a stroke, involving

4

the left medial occipital lobe.  As a result of the stroke,
Lourdes had a vision deficit in her right eye.

On November 4, 2012, Conde again attempted suicide by
taking an over dose of medication.  During her meeting for
medication management the next week, Conde discussed the ongoing
problems with her son and said she took the medication just so
that she could sleep.

She was treated in December of 2012 for vertigo, which had
resolved by March of 2013.  In January of 2013, she reported to
her mental health nurse practitioner that she was doing well and
that her only problem was her son.  Conde discussed concerns
about her grandson, said that she was waiting for social
security benefits, and declined to consider employment.  Her
reports during therapy over the next months were similar.  In
May of 2013, her diabetes was well controlled.  By July of 2013,
her attention and concentration were normal.

A hearing on her social security application was held on
November 4, 2013.  Conde was represented by an attorney and
testified.  Conde described her family issues and said that her
unsafe neighborhood kept her from feeling calm.  She also
described vision problems that she said caused problems with
concentration and testified that anxiety interfered with her
ability to complete tasks, that she did not sleep well, and that
she had vertigo one or two times per week.  The ALJ found that

5

Conde had physical and mental impairments but retained the capacity to do light work, with certain postural limitations, and was able to understand and carry out short and simple instructions.  Based on the Medical-Vocational Guidelines, the ALJ found that Conde was not disabled.  When the Appeals Council denied Conde's request for review, the decision became the decision of the Acting Commissioner.

## Discussion

In support of her motion to reverse the Acting Commissioner's decision, Conde contends that the ALJ made a variety of errors.[2]  She argues that the ALJ erred in finding that she did not have a significant impairment due to an anxiety-related disorder and that she did not meet the requirements of Listing 11.04.  She also argues that the ALJ should have given more weight to Dr. Hurst's opinion, that the ALJ misunderstood Dr. Stern's opinion, and that the ALJ erred in assessing her credibility.  Further, she contends that the ALJ

---

[2] Although Conde is represented by counsel, the motion and memorandum do not include a statement of issues, and the memorandum is not organized by headings stating the issues raised.  Instead, Conde presents an undifferentiated "Argument" with no citation to legal authority other than Social Security Ruling 96-7p.  As a result, it is difficult to ascertain clearly what parts of the decision Conde intends to challenge and what grounds would support her argument.  The issues listed here are the court's best interpretation of Conde's motion and memorandum.

erred in finding that she had the residual functional capacity
to do light work, in failing to find her disabled under Medical-
Vocational Guideline 201.09, and in failing to call a vocational
expert to testify at the hearing.

In determining whether a claimant is disabled for purposes
of social security benefits, the ALJ follows a five-step
sequential analysis.  20 C.F.R. §§ 404.1520 and 416.920.[3]  The
claimant bears the burden through the first four steps of
proving that her impairments preclude her from working.  Freeman
v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  At the fifth
step, the Acting Commissioner has the burden of showing that the
claimant is employable.  Heggarty v. Sullivan, 947 F.2d 990, 995
(1st Cir. 1991).

A.  Severe Impairments

After determining that a claimant is not engaged in
substantial gainful activity, the ALJ assesses the severity of
the claimant's impairments.  § 404.1520(a)(4).  An impairment is
severe, for purposes of the Step Two finding, if the impairment
is "medically determinable" and the impairment alone or in

_____

[3] Because the pertinent regulations governing disability
insurance benefits at 20 C.F.R. Part 404 are the same as the
pertinent regulations governing supplemental security income at
20 C.F.R. § 416, the court will cite only Part 404 regulations.
See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124
(1st Cir. 1989).

combination with other impairments "significantly limits [the claimant's] ability to do basic work activities." § 404.1520(a)(ii) & (c).  The claimant bears the burden of showing that she has a medically determinable severe impairment. Ramos v. Barnhart, 60 F. App'x 334, 335 (1st Cir. 2003).  If an ALJ erroneously excludes an impairment at Step Two, that omission is harmless as long as the ALJ found at least one severe impairment and considered all impairments at Step Four when assessing the claimant's residual functional capacity.  See Andrade v. Colvin, 2015 WL 5749446, at *6 (D. Mass. Sept. 30, 2015) (citing cases).

In this case, at Step Two, the ALJ found Conde had the following severe impairments:  "essential hypertension, diabetes mellitus, a vestibular system disorder/vertigo, major depressive disorder, and late effects of a cerebrovascular accident in January of 2010, including an organic mental disorder/cognitive disorder."  The ALJ also noted that the record showed that Conde complained of symptoms of anxiety but found that "there is no substantial medical evidence in the record establishing the claimant has been formally diagnosed by [an] acceptable medical source with any anxiety-related disorder, or that the claimant has significant work-related limitations because of anxiety." The ALJ found that because the record did not show that Conde

was more than minimally limited by anxiety in her ability to do work, that was not a severe impairment.

Conde disputes that finding, citing several pages from her records produced by The Mental Health Center.  The cited records show that Conde complained of anxiety but was diagnosed with a depressive disorder.  Contrary to Conde's argument, Conde's complaints of symptoms, which were recorded by health care providers, do not provide objective medical evidence of severe impairment.  § 404.1529(a) & (b); see also Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987).

Further, even if the ALJ erred in finding no severe impairment due to anxiety, that error is harmless because the ALJ considered all of her symptoms at Step Four.  Specifically, the ALJ considered Conde's allegations of impaired memory, trouble concentrating, impaired attention, difficulty handling stress, and difficulty getting restful sleep because of her "mental health deficits."  Conde, who bears the burden at Step Two and Step Four, has not shown that anxiety caused greater impairment than the ALJ considered.

B.  Listing

At Step Three of the sequential analysis, the ALJ assesses whether the claimant's impairments meet or equal the criteria for a section provided in Appendix 1, Subpart P of 20 C.F.R.

Part 404, which are known as the Listings.  The Listings "are descriptions of various physical and mental illnesses and abnormalities, much of which are categorized by the body system they affect."  Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990). "For a claimant to show that his impairment matches a listing, it must meet all the criteria for the one most similar listed impairment."  Id. at 530.  To show that her impairments equal a listed impairment, a claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment."  Id. at 531.

Conde contends that the ALJ erred in failing to find that she met the criteria for Listing 11.04.  Listing 11.04 provides as follows:

> 11.04 Central nervous system vascular accident.  With one of the following more than 3 months post-vascular accident:  A. Sensory or motor aphasia resulting in ineffective speech or communication; or  B. Significant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station (see 11.00C).[4]

---

[4] Listing 11.00C provides as follows:
Persistent disorganization of motor function in the form of paresis or paralysis, tremor or other involuntary movements, ataxia and sensory disturbances (any or all of which may be due to cerebral, cerebellar, brain stem, spinal cord, or peripheral nerve dysfunction) which occur singly or in various combinations, frequently provides the sole or partial basis for decision in cases of neurological impairment.  The assessment of impairment depends on the degree of interference with locomotion and/or interference with the use of fingers, hands, and arms.

In support, Conde states that she "suffered and continues to suffer ineffective speech or communication skills."  She cites no record evidence to support that assertion, and the record, along with Conde's testimony at the hearing, contradict her.[5] Therefore, the ALJ did not err in finding that Conde did not meet the criteria for Listing 11.04.[6]

C.   Medical Opinions

An ALJ is required to consider the medical opinions along with all other relevant evidence in a claimant's record.  20 C.F.R. § 404.1527(b).  Medical opinions are evaluated based on the nature of the medical source's relationship with the claimant, the consistency of the opinion with the other record evidence, the medical source's specialty, and other factors that may be brought to the ALJ's attention.  § 404.1527(c).  The ALJ may rely on opinions of state agency consultant physicians under the same analysis as that applied to opinions of treating or examining medical sources.  § 404.1527(e); Ormon v. Astrue, 497 F. App'x 81, 84 (1st Cir. 2012); Smallidge v. Colvin, 2014 WL 799537, at *5 (D.N.H. Feb. 28, 2014); see also Titles II and

---

[5] To the extent Conde intended to argue that her alleged difficulties with concentration and maintaining persistence and pace would support a finding that she met the requirements of Listing 11.04, she is mistaken.

[6] Conde does not contend that she "equaled" the criteria.

11

XVI:  Consideration of Administrative Findings of Fact by State
Agency Medical and Psychological Consultants and Other Program
Physicians, SSR 96-6p, 1996 WL 374180 (July 2, 1996).  Medical
opinions based on the claimant's subjective reports, rather than
objective medical findings, may be entitled to less weight.
Pagan Rodriguez, 819 F.2d at 3.

     The ALJ gave great weight to the opinions of state agency
consultants, Dr. Jaffe and Dr. Landerman; gave significant
weight to the opinion of Dr. Stern, who examined Conde as a
consultant; and gave little weight to the opinion of Dr. Hurst,
who examined Conde for New Hampshire's Aid to the Permanently
and Totally Disabled program ("APTD program").  Conde challenges
the ALJ's assessment of Dr. Hurst's opinion and argues that the
ALJ misunderstood the import of Dr. Stern's opinion.

     The ALJ adequately explained her reasons for discounting
Dr. Hurst's opinion.[7]  She noted that Dr. Hurst's opinion
addressed the standard applicable to the ATPD program, not the
different standard used for social security disability
determinations.  She then stated that Dr. Hurst's opinion about
Conde's functionality was based on Conde's report of her
subjective symptoms rather than on his own objective findings.
Further, the ALJ found that Dr. Hurst's opinion was inconsistent

_____

     [7] Dr. Hurst examined Conde but was not a treating source.

                              12

with Dr. Landerman's opinion and Conde's reports about her
activities and ability to function.  Conde has not shown that
the ALJ failed to give Dr. Hurst's opinion appropriate weight.

Conde also contends that the ALJ erred in failing to
consider Dr. Stern's "findings" about her symptoms.  The
symptoms Conde cites are her subjective reports to Dr. Stern,
not objective medical findings made by Dr. Stern.  In contrast,
Dr. Stern found that Conde would be able maintain schedules,
attendance, and relationships at work in an appropriate job.
Therefore, no error occurred.

D.  Credibility

It is the responsibility of the ALJ to determine whether
the claimant's description of her symptoms is credible.  Irlanda
Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st
Cir. 1991).  In making that determination, the ALJ must first
determine whether the claimant has an impairment that could
reasonably be expected to produce the symptoms described, and,
if so, whether the record evidence supports the claimant's
statements.  Policy Interpretation Ruling Titles II and XVI:
Evaluation of Symptoms in Disability Claims:  Assessing the
Credibility of an Individual's Statements, SSR 96-7p, 1996 WL
374186, at *4 (July 2, 1996); see also Brown v. Colvin, 2014 WL
6670637, at *10 (D.N.H. Nov. 24, 2014).  The ALJ then considers

the objective medical evidence in the record, the claimant's
statements about the intensity and persistence of symptoms, and
other evidence, such as the claimant's daily activities,
precipitating and aggravating factors, treatment, and
medications.  20 C.F.R. § 404.1529(c).  "It is the ALJ's
prerogative to resolve conflicting evidence, and [the court]
must affirm such a determination, even if the record could
justify a different conclusion so long as it is supported by
substantial evidence."  Vazquez-Rosario v. Barnhart, 149 F.
App's 8, 10 (1st Cir. 2005) (internal quotation marks omitted);
see also Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d
218, 222 (1st Cir. 1981)

     Conde appears to charge that the ALJ made only a conclusory
statement about her lack of credibility.  She is mistaken.  The
ALJ provided a thorough analysis to support her conclusion that
Conde's "statements concerning the intensity, persistence and
limiting effects of [her] symptoms are not entirely credible."
See Admin. Rec. 23-25.  Therefore, Conde has not shown that the
ALJ erred in assessing her credibility.


E.   Residual Functional Capacity

     A residual functional capacity assessment determines the
most a person can do in a work setting despite her limitations
caused by impairments.  20 C.F.R. § 404.1545(a)(1).  The Acting

14

Commissioner's residual functional capacity assessment is reviewed to determine whether it is supported by substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991); Pacensa v. Astrue, 848 F. Supp. 2d 80, 87 (D. Mass. 2012).

The ALJ found that Conde retained the functional capacity to do light work with certain postural limitations and with short and simple instructions.  Conde states that the ALJ's finding is "inappropriate" but does not provide any developed argument to support her theory.  The ALJ's assessment is well supported by the record evidence, as is explained in the decision.

F.  Disability Determination

The ALJ relied on the Medical-Vocational Guidelines ("Grid"), 20 C.F.R. § 404, Subpart P, Appendix 2, Rule 202.16 to find that Conde was not disabled.  At the fifth step of the sequential analysis, the Acting Commissioner bears the burden of proving that the claimant is employable.  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).  That burden may be satisfied by using the Grid as long as the claimant's non-exertional impairments do not significantly erode the occupational base at the identified exertional level.  Nguyen, 172 F.3d at 36; Ortiz

v. Sec'y of Health & Human Servs., 890 F.2d 520, 524 (1st Cir. 1989).

Conde argues that the ALJ erred in failing to find that she was disabled under Grid Rule 201.09.  Rule 201.09 applies to claimants who are "[c]losely approaching advanced age."  A claimant must be between 50 and 54 years old to be "closely approaching advanced age."  20 C.F.R. § 404.1563(d).  Because Conde was only 47 at the time of the ALJ's decision, she was a "younger person" and did not qualify for Rule 201.09.[8] § 404.1563(c).

Conde also argues that the ALJ erred in failing to have a vocational expert testify.  The ALJ, however, could properly rely on the Grid as a framework for decision-making as long as Conde's mental impairments did not significantly erode the occupational base for light and sedentary work.  The ALJ explained in the decision why Conde's mental health impairments would have little or no effect on the occupational base for light unskilled work.  Conde does not challenge the ALJ's analysis or point to any errors that would require reversal.

---

[8] Conde states at the beginning of her memorandum in support of her motion to reverse that she was a "younger individual" within the meaning of § 404.1563.

Conclusion

For the foregoing reasons, the claimant's motion to reverse
and remand (document no. 11) is denied.  The Acting
Commissioner's motion to affirm (document no. 14) is granted.

The clerk of court shall enter judgment accordingly and
close the case.

SO ORDERED.


_____
Joseph DiClerico, Jr.
United States District Judge


January 25, 2016

cc:  John A. Wolkowski, Esq.
     Terry L. Ollila, Esq.

17